**United States Bankruptcy Court**
District of New Jersey
Mitchell H. Cohen U.S. Courthouse
P.O. Box 2067
Camden, New Jersey   08101

**JUDITH H. WIZMUR**                                                                 (856) 757-5126
Chief, U.S. Bankruptcy Judge

                                        April 16, 2012

Thomas P. Lutz, Esq.
Cornerstone Commerce Center
1201 New Road, Suite 334
Linwood, New Jersey 08221

William P. Rubley, Esq.
Subranni Zauber, LLC
750 Route 73 South, Suite 307B
Marlton, New Jersey  08053

> **FILED**
> JAMES J. WALDRON, CLERK
>
> April 16, 2012
>
> U.S. BANKRUPTCY COURT
> CAMDEN, NJ
> BY:  s/ Theresa O'Brien, Judicial
> Assistant to Chief Judge Wizmur

        Re:   Daniel P. and Maureen H. Maloney
              Case No. 11-40584/JHW
                    **LETTER OPINION**

Dear Counsel:

        In this matter, the debtors seek to voluntarily dismiss their Chapter 7 case.  The Chapter 7 trustee opposes dismissal as an attempt by the debtors to avoid the liquidation of a significant asset, a mortgage that is a critical source of support for the debtors, and as an attempt by the debtors to avoid the potential recovery by the trustee of several preference payments made to the debtors' family members shortly before the filing.  The trustee contends that dismissal will severely prejudice the unsecured creditor body, and moves for the turnover of the mortgage and its proceeds.  The debtors assert that they will suffer a significant economic hardship if they are compelled to remain in the Chapter 7 process, and that their creditors will not be prejudiced if the

1

debtors are returned to their pre-filing position. For the reasons advanced, the debtors' motion to voluntarily dismiss their case is granted, and the trustee's motion for turnover is denied, on condition that the fees and expenses incurred by the trustee in this case to date are satisfied by the debtors.

## FACTS AND PROCEDURAL HISTORY

Daniel P. and Maureen H. Maloney filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 21, 2011. The debtors scheduled their principal residence as a condominium unit in Atlantic City, with negligible equity. Their mortgagee, the Bank of America, was the only listed secured creditor. The debtors scheduled approximately $90,000 in unsecured debt consisting entirely of credit card debt. As is relevant here, in Schedule B, Personal Property, the debtors listed an interest in a business entity referred to as Ocean Breeze Realty, LLC, assigning their interest a value of $0.00. As well, in response to item #18 of Schedule B, "Other liquidated debts owed to debtor including tax refunds. Give particulars.", the debtors listed "a mortgage on property they sold yeilding (sic) income of $2,000 per month," which they also valued at $0.00. In Schedule G, Executory Contracts and Unexpired Leases, the debtors provided further information about the mortgage, disclosing that the mortgagor is named Khadim Hussain, and that he pays $2,075 per month to the debtors on account of the mortgage. The debtors included the monthly mortgage payment in Schedule I, Current Income

2

of Individual Debtor(s). This amount represents over half of the debtors' monthly income, with the remainder coming from Mr. Maloney's pension benefits and Mrs. Maloney's social security. Mr. Maloney is on a postal service disability pension, and Mrs. Maloney is on a social security disability pension. After deducting their expenses, the debtors showed a negative net monthly income of -$824.24 on Schedule J. In their Statement of Financial Affairs, in response to question #10, "Other transfers", the debtors disclosed that they sold property located at 3101 Boardwalk, Unit R-28, Atlantic City, New Jersey to Mr. Hussain for $150,000 on September 30, 2011, approximately a month prior to their bankruptcy filing, that they received $40,000 in cash and that they took back a mortgage in the face amount of $110,000.

On October 24, 2011, Thomas J. Subranni was appointed as the Chapter 7 trustee. A section 341(a) meeting of creditors was scheduled for November 15, 2011. Several days prior to the 341(a) meeting, debtors' counsel provided a copy of the mortgage and the HUD-1 RESPA statement to the trustee. During the 341(a) meeting, the trustee questioned the debtors about the mortgage. The trustee initially filed a Report of No Distribution on November 17, 2011 but withdrew the document on November 22, 2011.

Following the 341(a) meeting, in a letter to the trustee dated December 5, 2011, counsel for the debtors explained that the mortgage at issue here arose from the sale of a commercial condominium, which had been the business

3

premises of Ocean Breeze Realty, LLC, a business in which the debtor, Daniel Maloney, Sr., held a 60% interest, and his son, Daniel Maloney, Jr., held a 40% interest. Counsel contended that the mortgage taken back by the debtors should be valued at not more than $55,000, or 50% of its face value, for several reasons. First, the mortgage was taken with no "credit check or wage inquiry" on Mr. Hussain, the purchaser, and without a personal guarantee from him. As well, the condominium is very small (493 square feet), cannot be used for any food service business, is not permitted to have any exterior signs, and is not located on the Atlantic City boardwalk.

In the December 5, 2011 letter to the trustee, counsel advanced for the first time the allegation that the debtors' son, Daniel Maloney, Jr., held a purchase money security interest in the business condominium and its proceeds. According to debtors' counsel, this security interest, which apparently was not documented by a mortgage, arose when the debtors' son loaned money to the debtors in 2006 to finance the purchase of the business condominium and to renovate the business property. Certif. of Counsel in Oppos., Exh. B. In addition, the debtors' son made "a contribution of capital" in the amount of $30,000 in March 2011 which was needed by the LLC to continue operating while the debtors tried to find a buyer for the commercial condo unit. Id. Appended to the letter were copies of two promissory notes memorializing the transactions, dated September 25, 2006 and March 15, 2011, reflecting a total debt to the debtors' son of $65,000. The letter

4

explained that the debtors had expected to repay their son from the sales proceeds of the business property but that the actual sales proceeds were insufficient.  The debtors received $40,000 in cash from the sale and paid $14,000 of that amount to their son.  An additional $10,000 from the sales proceeds was paid to the debtor's brother, Michael Maloney, who had also allegedly advanced money to assist in the original purchase of the property.  Both the payment to the debtors' son and the payment to the debtor's brother appeared on the HUD-1 RESPA statement, which was forwarded to the trustee prior to the 341(a) meeting.

Accompanying the December 5 letter were various amended schedules, which were filed with the court on December 7, 2011.  Schedule D was amended to include the secured claim asserted by the debtors' son in the amount of $60,875.  Schedule B was amended to list the mortgage at a value of "$55,000 or less", subject to the debtors' son's security interest of over $60,000.  Schedule C was amended to exempt $21,910 of the proceeds of the mortgage.

On December 7, 2011, the same date that the debtors' amended schedules were filed, debtors' counsel filed a proof of claim on behalf of the debtors' son, Daniel Maloney, Jr., asserting a secured claim against the debtors' bankruptcy estate in the amount of $60,875, as well as a priority

5

claim for commissions of up to $11,725.[1] Attached to the proof of claim were copies of the two promissory notes between the debtors and their son. In both notes, the first in the amount of $35,000 and the second in the amount of $30,000, the debtors agreed to repay their son in full from their realty commissions or from the proceeds of the sale of the business property.

In correspondence to the trustee dated January 19, 2012, debtors' counsel advised that the debtors intended to file a motion to dismiss their case. Counsel acknowledged that the trustee's challenge to the alleged security interest held by the debtors' son was probably sustainable. If that security interest was invalid, "it would defeat the entire point of my clients [sic] filing for bankruptcy in the first place." Certif. of Counsel in Opp. to Debtors' Motion to Convert, Exh. G. He also defended the debtors' good faith, noting that all of the relevant documents had been disclosed to the trustee prior to the 341(a) meeting.

The trustee moved on January 23, 2012 for the turnover of the Hussain note and mortgage to the bankruptcy estate, as well as the turnover of all post petition mortgage payments received by the debtors from Mr. Hussain. The trustee asked that all future mortgage payments be directed to his office.

---

[1] Debtors' counsel submitted a Limited Power of Attorney from Daniel Maloney, Jr., authorizing him to file the proof of claim. The issue of the conflict of interest in representing a debtor, and filing a proof of claim on behalf of a creditor in the same case, is not addressed in this opinion.

On the next day, January 24, 2012, the debtors moved to convert their case to Chapter 13. See 11 U.S.C. § 706(a). Citing to Marrama v. Citizens Bank of Mass., 549 U.S. 365, 127 S. Ct. 1105, 166 L.Ed.2d 956 (2007), the Chapter 7 trustee challenged the debtors' "absolute right" to convert to Chapter 13, and contended that the debtors' motion to convert should be denied. The trustee argued that

> The Debtors failed to disclose approximately $24,000 in payments to insiders; they attributed no value to a $110,000 mortgage that they owned; they failed to identify the son as a creditor and only did so when it became apparent that the Trustee wanted to take possession of the mortgage they held; and then baselessly claimed the son had a security interest in the proceeds of the mortgage and therefore it had no actual value to the estate.

Certif. of Counsel in Oppos. at 5, ¶ 17. The trustee argued further that the debtors were unable to propose a confirmable plan, unsecured creditors would be prejudiced, case administration would not be more efficient, and allowing conversion would be an abuse of the bankruptcy process.

In response to the suggestion by the trustee that the Chapter 7 case was filed in bad faith, the debtors noted that the mortgage in question was disclosed in several places in their petition and that it was provided to the trustee prior to the 341(a) meeting. Debtors' counsel explained that when he prepared the petition, he believed that the $2,075 mortgage only represented income to the debtors, and would not otherwise be characterized as an asset that could be liquidated by the trustee for the benefit of the Chapter 7 estate.

7

Counsel acknowledged that he failed to notice the payments to insiders made at the settlement on the debtors' commercial property and noted on the HUD-1 statement, admitting further that if he had noticed the payments, he "never would have allowed the Debtors to file bankruptcy at all." Counsel's Certif. in Reply at 3, ¶ 10. He insisted that the debtors have been "candid and forthright" and that no dishonesty has been involved. With respect to the feasibility of a proposed Chapter 13 plan, counsel indicated that the debtors' petition would be amended to reflect "changed financial circumstances which, along with a contribution from another family member" would result in a feasible, confirmable plan. Id. at 4, ¶ 15.[2]

The trustee's motion for turnover and the debtors' motion to convert came on to be heard in court on February 14, 2012. Debtors' counsel acknowledged that a Chapter 13 plan did not appear to be feasible, the debtors' motion to convert their case to Chapter 13 was withdrawn, and the matter was carried to afford the debtors an opportunity to file a motion to voluntarily dismiss the case.

---

[2] In several submissions to the court and in testimony offered by Mr. Maloney, he accused the trustee of treating him and his wife unfairly, of dealing with the debtors in an unduly harsh manner, and of discriminating against them because they were disabled and because they were collecting disability payments. I am not asked in the motions before me to make fact findings regarding these allegations, or to attach consequences to these allegations. I simply note that these allegations have been made.

8

On February 27, 2012, the debtors moved to dismiss their Chapter 7 case. In an affidavit and in testimony presented in court on March 20, 2012, Mr. Maloney explained that the "bankruptcy filing was based entirely on [the debtors'] misunderstanding of the treatment of this monthly [mortgage] payment." Daniel Maloney Affid. at 3, ¶ 11. He insisted that they "would not have filed for bankruptcy otherwise." Id. He is looking for employment, and believes that he will be able to pay some portion of the debtors' credit card debt outside of bankruptcy with help from family members and with anticipated earnings from employment. If they are compelled to stay in bankruptcy and lose the income from the monthly mortgage payment, he believes that they will most likely default on their home mortgage and lose their home to foreclosure. He explained that his son has agreed to forgo debt repayment while the debtors negotiate with their other creditors on repayment terms. He also noted that he was pursuing a loan modification of his home mortgage to devote additional resources to satisfy existing creditors.

In opposing the motion to dismiss, the trustee states that the debtors have "done everything they could think of to shield this asset from the Trustee." Trustee's Memo in Oppos. at 2.  On their initial schedules, the debtors listed the value of the mortgage as $0, failed to disclose the $24,000 in insider payments that were made, and did not list Daniel Maloney, Jr. as a creditor. The trustee contends that the debtors have not shown good cause for dismissal. They rely only upon their attorney's mistaken belief that the

9

Hussain mortgage constituted income rather than a saleable asset. This is a legal error, and not a factual mistake. The trustee believes that the debtors have "on more than one occasion included deliberately false information in their Petition." Id. at 5. He asserted that "[w]hen it became clear that none of their attempts to shield the mortgage from the trustee were going to work," the debtors turned to "baselessly accusing the Trustee of disability discrimination . . . acting unethically," and retaliating against them. Id. The trustee seeks to take possession of and to liquidate the mortgage, and to prosecute the adversary proceeding filed to recover the preferential payments allegedly made.

## **DISCUSSION**

Section 707(a) of the Bankruptcy Code provides that the court may dismiss a Chapter 7 case "only after notice and a hearing and only for cause." 11 U.S.C. § 707(a). A Chapter 7 debtor may move for voluntary dismissal under this section, but has no absolute statutory right to do so. In re Aupperle, 352 B.R. 43, 45 (Bankr. D.N.J. 2005). The debtor has the burden of demonstrating sufficient cause for dismissal. In re Turpen, 244 B.R. 431, 434 (8th Cir. BAP 2000). "Determining whether sufficient cause exists is committed to the sound discretion of the bankruptcy court." In re Jabarin, 395 B.R. 330, 337 (Bankr. E.D.Pa. 2008).

Courts have developed certain factors to help guide the determination of whether sufficient cause exists to grant voluntary dismissal, including:

> (1) whether all of the creditors have consented;
>
> (2) whether the debtor is acting in good faith;
>
> (3) whether dismissal would result in a prejudicial delay in payment;
>
> (4) whether dismissal would result in a reordering of priorities;
>
> (5) whether there is another proceeding through which the payment of claims can be handled; and
>
> (6) whether an objection to discharge, an objection to exemptions, or a preference claim in pending.

In re Aupperle, 352 B.R. at 46 (quoting In re Turpen, 244 B.R. 431, 434 (8th Cir. BAP 2000)). These factors serve to determine "whether or not the dismissal is in the best interests of the debtor and the creditors of the estate." Id. (citing to In re McCullough, 229 B.R. 374, 376 (Bankr. E.D.Va. 1999)). Put another way, the determination of sufficient cause to dismiss requires "a factually intensive assessment of the debtors' reasons for requesting dismissal and of the impact dismissal can be expected to have on the creditors." In re Jabarin, 395 B.R. at 339. This assessment has been labeled as a "balancing test," requiring the bankruptcy court to consider the likely effect of dismissal or non-dismissal on both the debtors and the creditors. Id.

An assessment here of the debtors' reasons for requesting dismissal do not suggest a lack of good faith on the part of the debtors. The debtors

11

essentially relied on the errors made by counsel in failing to properly characterize the nature of the asset held by the debtors and failing to identify certain preferential payments. But for these errors, the debtors contend that they would never have filed for bankruptcy protection.

Generally speaking, "[c]ourts are not impressed with complaints of attorney negligence, lack of representation, or errors in judgment by debtors when considering motions for voluntarily (sic) dismissal." In re Hopper, 404 B.R. 302, 308 (Bankr. N.D.Ill. 2009). But in this case, the errors are significant, and include: (1) counsel's mistaken belief that the mortgage held by the debtors was worthless to the bankruptcy estate, and would be considered only in light of the income generated from the mortgage rather than as an asset; (2) counsel's mistaken belief that the so-called "purchase money security interest" held by the debtors' son was valid even without documentation of a mortgage, and (3) counsel's failure to note on the HUD sheet from the sale of the property that $24,000 was paid to the debtors' son and to the debtor's brother shortly before the filing.

Counsel for the debtors has candidly and forthrightly acknowledged these errors, and has further acknowledged that he would have advised his clients not to file a bankruptcy case if he would have properly assessed all of the circumstances.

This is a rare case where the good faith of the debtors is not accurately reflected by the circumstances. The trustee has been properly pursuing the mortgage secured by the debtors, and has understandably surmised that the circumstances pointed to the debtors' lack of good faith. But the candidly acknowledged mistakes committed by the debtors' counsel explain these circumstances in large part. Most significantly, notwithstanding the deficiencies noted above in the schedules, the debtors did disclose all aspects of their financial circumstances from the outset, even before the first meeting of creditors, with one notable exception. While the HUD sheet noting the payments to family members made at settlement was given to debtors' counsel and to the trustee, there was no indication on the initial schedules filed that a debt was still due and owing to the debtors' son. Notwithstanding this omission, I am prepared on this record to conclude that the debtors acted in good faith in filing their petition.

We turn then to the impact a dismissal would have on the creditors of the bankruptcy estate. As in the Jabarin case, the debtors here seek a dismissal of their bankruptcy case because the Chapter 7 trustee has targeted assets that may provide a source of distribution to creditors.

> One court has observed that "[t]he discovery of assets is not cause to dismiss" a bankruptcy case, but rather, "[i]f anything, . . . is grounds for retaining jurisdiction, i.e., that creditors who perhaps expected to recover nothing on their claims may be assured of an equitable and full distribution of the debtor's newly discovered assets." In re Baumgarten, 154 B.R. 66, 69 (Bankr. S.D. Ohio 1993) (citing In re Williams, 15 B.R. 655 (E.D.Mo. 1981), aff'd, 696 F.2d 999 (8th Cir. 1982) (Table) and In re Blackman, 3 B.R. 167

>  (Bankr. S.D. Ohio 1980)).  That the intended use of the discovered
>  assets is the support of the debtor's family does not alter this
>  general principle.  See In re Cink, 2007 WL 601585 at *3 (the
>  "[d]ebtor's desire to preserve family property does not constitute
>  cause for dismissal").

395 B.R. at 342.  See also In re Jong Hee Kang, No. 11-43988, 2012 WL 614785 (Bankr. D.N.J. Feb. 27, 2012).  The assets previously targeted by the trustee are sought to be retained by the debtors for their ongoing support, but that motivation does not by itself serve here to overcome the prejudice to creditors that would be occasioned by a dismissal of the case.

    Prejudice to the creditors may also be discerned in light of the pending preference actions against the debtor's brother and son.  As noted above, the debtors paid their family members $24,000, less than one month before the filing, on account of the outstanding debt due to them.  Outside of the bankruptcy process, those payments may not be recoverable.

    I must also observe that the debtors are not able to offer their creditors a realistic repayment plan.  Mr. Maloney, who is on a disability pension, proposes to seek employment, but acknowledges his physical limitations.  Mrs. Maloney is on Social Security disability.  Even with receipt of the monthly mortgage payment of $2,000, the debtors' monthly expenses exceed their monthly income.  There is no reasonable prospect of a repayment to creditors if the case is dismissed.  In re Hopper, 404 B.R. at 311 ("The Debtor's vow to pay her creditors in the future does not dispel such prejudice.").

Having determined that the debtors have acted in good faith in filing their petition and in seeking a dismissal of the case, and that creditors will be prejudiced by a dismissal, I am faced with the ultimate issue of whether cause for dismissal has been established. To arrive at that conclusion, I must balance the likely effect of dismissal or non-dismissal on both the debtors and the creditors. As to the debtors, the consequences of non-dismissal are catastrophic. Apart from the monthly payment received as mortgagees, the debtors' combined income from Social Security and pension disability is $1,700.76. With the receipt of the mortgage payment, their monthly income is $3,775.76, while their monthly expenses, including a $1,940 mortgage payment and $700 a month toward real estate taxes on their residential condominium unit, amount to $4,600. Even with the monthly payment of $2,075, the deficit is $824 a month. The expenses listed are very low, with food listed at $400 per month and clothing at $50 per month for both debtors. The debtors' assertion that they would lose their home to foreclosure is certainly borne out as a probability by the income and expense picture reflected in their schedules.

As to the loss of the mortgage as an asset, the principal amount of the mortgage at this point is about $100,000. We can reasonably assume that if the trustee liquidates the mortgage, the purchase price of the mortgage will be substantially discounted from the face amount. Any excess value that would have inured to the benefit of the debtors will be lost.

15

On the creditors' side, we assume from this analysis that the trustee would liquidate the mortgage, and would prosecute the preference actions.[3] Debtors' counsel has offered several credible reasons for concluding that the price to be achieved for the mortgage might be about 50% of the face amount due, or approximately $50,000. While this is admittedly speculative, I will rely on it for purposes of this analysis. I will also assume that the trustee will ultimately be successful in receiving some return on the preference payments made to the debtors' family members, or about $15,000.[4] To be offset against the pool of estate funds available for distribution to the creditors would be the cost of administration, estimated to be about $26,500,[5] and the debtors' claimed exemptions of $21,910, leaving about $16,590 to distribute to creditors. The creditor body is comprised of filed claims totaling $132,797.84, which may realistically be reduced to about $107,000.[6] Nearly half of the

---

[3]    The debtors' residence does not appear to have any equity beyond the mortgage against the property.

[4]    Assuming that the trustee receives judgments against both the debtors' son and the debtor's brother, a discount is assumed to account for potential collection issues.

[5]    Obviously, it is impossible to assess with accuracy the actual cost of administration. We can ascertain that if $65,000 is available for disbursement, than the Chapter 7 trustee would be entitled to compensation in the approximate amount of $6,500. See 11 U.S.C. § 326(a). It is not difficult to imagine that the trustee would need to spend at least $20,000 in legal fees to administer this case, particularly in light of the legal resources already committed to the case to date, as well as the potential difficulties involving the sale of the mortgage.

[6]    The proof of claim filed on behalf of the debtors' son appears to include commissions ($11,725) due from the real estate company owed by the debtor and his son rather than from the debtors. As well, the proof of claim does not

claims are held by the debtors' son.  Each creditor would receive a dividend of about 15.5% on each claim.

In the normal course, I do not believe that a balancing of the respective detriment to a debtor versus the detriment to the creditor body in determining whether cause exists to dismiss a Chapter 7 case entails an arithmetic formula arrived at through estimation and guesswork about the ultimate dividend that might be achieved by creditors if the case is fully administered.  Nevertheless, I have engaged in that analysis here to examine the potential outcomes of dismissal or non-dismissal under these very unusual and difficult circumstances.  A balancing of the potential outcomes leads me to the conclusion that the debtors have shown sufficient cause to warrant dismissal under § 707(a).

My conclusion is buttressed by several additional factors.  This is the debtors' first bankruptcy filing.  There were no prepetition collection efforts by the creditors, and the creditors will be returned to the same collection opportunities they had before the petition was filed.  Dismissal of the case will not occasion any reordering of priorities.

---

account for the $14,000 paid to the creditor pre-petition on account of the claim.

## **CONCLUSION**

I conclude that the debtors' motion to dismiss the case is granted, and the trustee's motion for turnover of the mortgage and its proceeds is denied. Of course, we must condition the dismissal of the case on the satisfaction by the debtors of the resources expended by the trustee to date, including attorneys' fees, on this case. I direct the trustee to file an application for fees and costs within 14 days of this letter opinion. The application will be set down for hearing on May 15, 2012 at 2:00 p.m. Any objections to the fees and expenses sought must be submitted by May 11, 2012. A final fee award will be entered. The monthly mortgage payment must be directed to the trustee until the fee award is satisfied in full, after which the payment will be redirected to the debtors.

Debtors' counsel shall submit an order in conformance herewith.

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT